IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| MICHAEL BRADLEY VAUGHN and | * | |
| CAROL ELIZABETH VAUGHN, | * | Case No.: 1-06-bk-00788MDF |
| Debtors | * | |
| | * | |
| ECAST SETTLEMENT CORP., | * | |
| Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| MICHAEL BRADLEY VAUGHN and | * | |
| CAROL ELIZABETH VAUGHN, | * | |
| Respondents | * | |

## OPINION

How is a debtor's "projected disposable income" calculated for chapter 13 plan confirmation purposes? This determination is significant because the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), provides that if a party in interest objects to a debtor's proposed plan, it may not be confirmed unless the debtor either pays 100% of the allowed unsecured claims or devotes all of his "projected disposable income" for the applicable commitment period to pay unsecured creditors. 11 U.S.C. § 1325(b)(1). Some bankruptcy courts have held that "projected disposable income" is derived from the calculation of "disposable income" through the preparation of Form B22C ("Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income Calculation")[1] multiplied by the number of months in the applicable

---

[1] The Interim Rules and Official Forms implementing the BAPCPA contain three forms to comply with the reporting and calculation of current monthly income. Form B22 has three versions, A, B and C, for use in Chapters 7, 11 and 13, respectively. In the context of a Chapter 7 petition, Form B22A is used to determine whether the filing creates a presumption of abuse.

1

commitment period. A majority of courts have rejected this formulaic approach and have adopted a totality of the circumstances analysis using the information included in the schedules of income and expenses (Schedules "I" and "J," respectively), as well as other factors. Still others have found that monthly disposable income, calculated using Form B22C, presumptively is a debtor's "projected disposable income," but that this amount may be adjusted by examining other factors, including the information on Schedules "I" and "J." For the reasons set forth below, I conclude that, except in rare circumstances, "projected disposable income" is "disposable income" as calculated on Form B22C multiplied by the number of months in the applicable commitment period.

**Factual and Procedural History**

Michael and Elizabeth Vaughn ("Debtors") filed a chapter 7 bankruptcy petition on April 26, 2006. They converted their case to chapter 13 a few months later and filed amended Schedules "I" and "J." Schedule "I" reported joint income of $4,994.27 per month, and Schedule "J" reported monthly expenses of $4,633.23. When the expenses on Schedule "J" are deducted from gross income on Schedule "I," Debtors have monthly net income of $361.04. Debtors also filed an amended Form B22C after they converted to chapter 13 that reported annualized current monthly income of $71,492.40, which is above the Pennsylvania median income of $68,836.00. After deducting their expenses, Debtors reported monthly disposable income on Form B22C, Line 58 of $196.91. The income reported on Form B22C, unlike the income reported on

---

Form B22C is used in all Chapter 13 cases to determine whether a debtor earns more or less than the median family income for the state in which the debtor resides and the amount of disposable income. The median income determination dictates the length of the applicable commitment period.

2

Schedule "I," is based on "current monthly income," which is defined as the average monthly income received during the six calendar months prior to the filing of the bankruptcy petition. 11 U.S.C. § 101(10A). Debtors' income as reported on Form B22C was higher than the income reported on Schedule "I," but the total deductions of $5,760.79 on Form B22C, Line 51 were significantly higher than the Schedule "J" expenses of $4,633.23. Therefore, the monthly disposable income reported on Form B22C was less than the difference between monthly income and expenses as reported on Schedules "I" and "J." Debtors' chapter 13 plan proposes to pay $264.00 per month from future income for a period of sixty months.

Debtors listed three vehicles on their schedule of personal property – a 1989 Chevrolet Cavalier valued at $300.00, a 1998 Chevrolet Tracker valued at $890.00, and a 2002 Chevrolet Impala valued at $7,300.00. The balance owed on the Impala as of the date of the petition was listed as $5,957.60, with monthly payments under the contract of $270.80. At $270.80 per month, the Impala will be paid off in less than two years. Debtors hold title to both the Cavalier and the Tracker free and clear of any liens. On Form B22C, Debtors reported a deduction of $200.20 for their Impala (their "first vehicle"). This deduction was calculated by subtracting the monthly loan payment of $270.80 from the IRS Local Transportation Expense Standard, Northeast Census Region, Ownership Costs for a "first car" in the amount of $471.00.[2] Debtors also claimed a deduction of $332.00 for a second vehicle, even though they have no debt payments due on either the Cavalier or the Tracker.

---

[2]*See* www.usdoj.gov/ust/eo/bapcpa/20060213/bci_data/IRS_Trans_Exp_Stds_NE.htm.

On November 8, 2006, eCAST, which holds an undisputed, liquidated unsecured claim, filed an objection to the plan. A hearing was held on January 26, 2007, and this matter was taken under advisement. Briefs have been filed, and the matter is ready for decision.[3]

### Discussion

Seeking to "cover all the bases," eCAST argues that whether Form B22C or Schedules "I" and "J" are used to calculate projected disposable income, Debtors have failed to meet the requirements of 11 U.S.C. § 1325(b)(2). According to eCAST, if Form B22C is used to compute projected disposable income, Debtors have made three errors in their calculations on the form. First, Debtors are not entitled to claim the transportation ownership deduction if their actual ownership expense is less than the maximum deduction permitted under Internal Revenue Code guidelines. Second, Debtors have incorrectly calculated the deduction for debt payment on their Chevrolet Impala by claiming the monthly contract amount rather than the "Average Monthly Payment" as defined in Form B22C. Finally, e-CAST asserts that Debtors are not entitled to a second ownership deduction for a vehicle that is not subject to a lien. Alternatively, eCAST states that if "projected disposable income" is calculated using Schedules "I" and "J," the plan fails to devote all of Debtors' "projected disposable income" as required by § 1325(b)(1).

Debtors respond that they are committing more than 100% of their disposable income to the plan. Specifically citing 11 U.S.C. § 1325(b)(2), Debtors state that the amount of their "proposed disposable income" is not the difference between Schedules "I" and "J," but rather is

---

[3] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) (L) and (O). This Opinion constitutes findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052 which is made applicable to contested matters pursuant to Fed. R. Bankr. P. 9014(c).

4

determined by reference to Form B22C. Further, they argue that they are entitled to claim the ownership deduction for two vehicles even if the payments are less than the allowable deduction or the vehicle is not subject to a lien.

### I.     *Projected disposable income under BAPCPA*

####     *a.     Statutory provisions at issue*

The issues in this case arise from the BAPCPA amendments to 11 U.S.C. § 1325(b). If the trustee or an unsecured creditor objects to the confirmation of a plan, a court may not approved the plan unless the claim is paid in full or:

> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. §1325(b)(1)(B). The subsection further provides that:

> (2) For purposes of this subsection, the term "*disposable income*" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended --
>   (A)(i) for the maintenance or support of the debtor or a dependent of the debtor. . . .

11 U.S.C. § 1325(b)(1)(B) (italics added). Section 1325(b)(3) further provides that "[a]mounts reasonably necessary to be expended" that may be deducted from "disposable income" are to be determined under § 707(b)(2)(A) and (B).

In the instant case, Debtors are above median income debtors,[4] and they have calculated their "projected disposable income" using Form B22C. The Court must determine whether the

---

[4] Debtors whose income in the calendar year preceding the bankruptcy was greater that the median family income for a debtor in the same-sized household in the state in which the petition is filed are known in current bankruptcy parlance as "above median income debtors." *See* 11 U.S.C. § 101(39A).

5

undefined term "projected disposable income" is a simple mathematical calculation determined by multiplying the defined term "disposable income" by the number of months in the applicable commitment period or is a discreet term that accommodates additional considerations.

The "starting point" when construing the words of a statute is "the existing statutory text." *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S. Ct. 1023, 1030, 157 L. Ed.2d 1024 (2004). "It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Id.* (citations and internal quotations omitted). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *In re American Steel Product, Inc.,* 197 F.3d 1354, 1356 (11th Cir. 1999) *quoting United States v. Ron Pair Enterprises, Inc*., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The plain meaning of a statute is controlling unless "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair Enterprises,* 489 U.S. at 242. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed.2d 808 (1997) *quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S. Ct. 3245, 3250, 73 L. Ed.2d 973 (1982).

6

It is undisputed that BAPCPA was enacted to address perceived abuses of the bankruptcy laws. "Among the abuses identified by Congress was the easy access to chapter 7 liquidation proceedings by consumer debtors who, if required to file under chapter 13, could afford to pay some dividend to their unsecured creditors." *In re Hardacre*, 338 B.R. 718, 720 (Bankr. N.D. Tex. 2006). In its effort to thwart abuse, Congress not only created a process designed to channel more solvent debtors into chapter 13, it also prescribed a formula to calculate plan payments for above median income debtors. Significantly, the question of whether a debtor's expenses are reasonably necessary, which was subject to judicial discretion pre-BAPCPA, is now resolved by reference to explicit statutory provisions. These provisions include the National Standards and Local Standards in the Internal Revenue Services's guidelines for collection of delinquent taxes.[5]

Regardless of Congress's intent, the task of this Court is to determine the meaning of the statute as written. Under § 1325(b)(1)(B), if the trustee or an unsecured creditor objects, the court may not approve a proposed chapter 13 plan that fails to provide that all of the debtor's "projected disposable income" during the applicable commitment period will be paid into the plan unless all allowed unsecured claims are paid in full. Bankruptcy courts have arrived at different conclusions as to the meaning of the term, but virtually all of the decisions have relied on a contextual analysis of the phrase. The term "projected disposable income" was included in § 1325(b)(1)(B) prior to the BAPCPA amendments and was not altered by the changes made to the

---

[5]Congress's adoption of standard expense amounts may have been in response to diverse judicial holdings under the prior statute addressing which expenses are reasonably necessary. *See In re Slusher*, 359 B.R. 290, 294 (Bankr. D. Nev. 2007)(citing cases); *see also* David S. Kennedy, *How Fresh is the Debtor's Fresh Start? Standard of Living Issues for the Post-Petition Debtor*, 7 J. Bankr. L. & Prac. 581, 602-611 (1998) (Pre-BAPCPA courts took three approaches when determining "reasonably necessary" expenses – the "basic necessities only" approach, the "totality of the circumstances" approach and the "hands-off" approach.).

Code. However, post BAPCPA a debtor is required to commit to the plan "projected disposable income" to be received in the "applicable commitment period" rather than "projected disposable income" to be received over three years as specified in the prior version of the Code.

The significant changes to § 1325(b) occur in paragraphs (b)(2), (b)(3) and (b)(4). Paragraph (b)(2) provides a new definition for "disposable income," paragraph (b)(3) describes how reasonably necessary expenses are to be calculated, and paragraph (b)(4) defines "applicable commitment period." The phrase "disposable income" only appears in two instances in subsection (b) – in the definition of the term in (b)(2) and as part of the phrase "projected disposable income" in (b)(1)(B). It is significant that the definition of "disposable income" is placed within the same subsection of § 1325 that requires a debtor, under certain facts, to commit his "proposed disposable income" to the payment of unsecured creditors. Although the definition of "disposable income" was modified by BAPCPA, the placement of the definition within § 1325(b) is the same. Further the language in § 1325(b)(2), which states that the term "disposable income" is defined in that paragraph "for the purposes of subsection (b)," was not amended. "If 'projected disposable income' is given a separate and independent meaning from 'disposable income,' it would appear that the defined term 'disposable income' has no purpose within the subsection whatsoever." *In re Kolb*, ___ B.R. ___, 2007 WL 960135 at *10 (Bankr. S.D. Ohio) (citing *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006)). Further, there is nothing in the statute to suggest that by providing a new definition for "disposable income," Congress intended to create a radically different definition for the two terms that under prior law had similar meanings.

When an identical phrase is used in a statute and in a later amendment, the phrase should be given the same meaning absent some indication in the amended statute or in its legislative history that a different meaning is intended. *Matter of Peachtree Lane Associates, Ltd.*, 150 F.3d 788, 796 (7th Cir. 1998). Further, when specific terminology is reenacted, unless Congress explicitly rejects prior judicial construction of the language, interpretation of the terminology included in the prior statute may be applied in construing the amended statute. *Etchu-Njang v. Gonzales*, 403 F.3d 577, 582 (8th Cir. 2005) (cited in *In re Kurtzahn*, 337 B.R. 356, 364 (Bankr. D. Minn. 2006); 1A Norman J. Singer, Sutherland Statutory Construction § 22:33 (6th ed. 2003). Before the enactment of BAPCPA, courts did not interpret "projected disposable income" as a phrase independent of the term "disposable income." The Fourth Circuit observed in *Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1132 (4th Cir. 1995), that "[p]rojected disposable income typically is calculated by multiplying a debtor's monthly income at the time of confirmation by 36 months, the normal duration of a Chapter 13 plan, then determining the portion of that income which is 'disposable' according to the statutory definition." *See also Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 357 (9th Cir. 1994) (citing *Matter of Killough*, 900 F.2d 61, 94 (5th Cir. 1990) (determining projected disposable income "is usually accomplished by multiplying the debtor's monthly income by 36.").[6] Accordingly, there is no basis for construing the term "proposed" any differently than it was understood under the prior statute.

---

[6] Cases decided before the enactment of BAPCPA also wrestled with the difficulties inherent in projecting future disposable income. *In re Crompton*, 73 B.R. 800, 808 (Bankr. E.D. Pa. 1987) (present monthly income and expenditures should be used to determine projected disposable income rather than "engaging in hopeless speculation about the future.").

Case 1:06-bk-00788-MDF    Doc 62    Filed 06/08/07    Entered 06/08/07 15:23:29    Desc
Main Document    Page 9 of 19

Although the methodology used to calculate "projected disposable income" was not changed by the enactment of BAPCPA, the product of the calculation is different. Congress has created a radically new definition for "disposable income." Under the prior statute, "disposable income" was defined as income received by the debtor that is not reasonably necessary for debtor's support. This amount typically was computed by subtracting the expenses listed on Schedule "J" from the income reported on Schedule "I." *But see In re Pak*, 357 B.R. 549, 553 (Bankr. N.D. Cal. 2006) (Schedules I and J are a "snapshot of the debtor's current income and expenses at the time of filing." Pre-BAPCPA bankruptcy courts considered anticipated changes in income and expenses to determine "projected disposable income.") "Disposable income" is now defined by reference to a new term, "current monthly income." 11 U.S.C. § 1325(b)(2). "Current monthly income" is derived from an average of a debtor's income over the six months prior to the bankruptcy filing and also includes contributions by others to a debtor's household expenses.[7] 11 U.S.C. § 101(10A). Therefore, Congress has determined that a debtor's average income over the six months prior to filing, rather than actual income on the date of filing, more accurately reflects a debtor's "*current* monthly income."

The new definition of "disposable income" has convinced several courts that "projected disposable income" must be distinct from "disposable income" because "disposable income" is based on historical data and "projected disposable income," by definition, is forward looking. *See In re Kibbe*, 361 B.R. 302, 312-13 (B.A.P. 1st Cir. 2007). This Court respectfully disagrees with

---

[7]Even prior to the enactment of BAPCPA, courts considered the income of non-filing members of a debtor's household when computing "projected disposable income." *See In re Carter*, 205 B.R. 733, 736 (Bankr. E.D. Pa. 1996) ("Most courts include the debtor's spouse's income in the budget for purposes of calculating projected disposable income under § 1325(b) notwithstanding that the spouse is not a debtor in the Chapter 13 case.")

10

this interpretation of Congress' intent. Congress has intentionally blurred the distinction between past and future by defining "*current* monthly income" as income received during the prior six months. Describing income as "current" when, in reality, it is an average of past income may sound like a Humpty Dumptyism,[8] but this is the formulation that Congress has adopted.[9] Further, the word "projected" is not surplusage. It was retained for a purpose. It is an acknowledgment that "disposable income" is a fixed monthly amount, but "projected disposable income" is "disposable income" that will be received by unsecured creditors extended over the life of the plan. Therefore, I see no reason to depart from the generally accepted construction of the prior statute that "projected disposable income" is simply monthly "disposable income" projected out over the applicable commitment period.

  b.  *Divergent case law*

Numerous cases that have construed the phrase "projected disposable income" and have reached divergent conclusions. *See, e.g., In re Brady*, 2007 WL 549359 (Bankr. D. N.J. February 13, 2007) (Form B22C reflects a "very clearly fixed formula" established by Congress for

---

[8]"'When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean – neither more nor less.' 'The question is,' said Alice, 'whether you can make words mean so many different things.' 'The question is,' said Humpty Dumpty, 'which is to be master – that's all.'" Lewis Carroll, *Through the Looking Glass*, Chapter 6 (1871).

[9]The reasons Congress adopted a past income average to determine future income is not apparent in the statute. The purpose may have been to provide for fluctuations in income that occur with many debtors because of layoffs, overtime work and other factors. One court has speculated that perhaps Congress did not trust debtors to provide current information or simply wanted "formulaic certainty over judicial discretion." *In re Kolb*, ___ B.R. ___, 2007 WL 960135 at *11 (Bankr. S.D. Ohio, March 30, 2007).

11

Case 1:06-bk-00788-MDF Doc 62 Filed 06/08/07 Entered 06/08/07 15:23:29 Desc
Main Document  Page 11 of 19

determining a debtor's disposable income.).[10] *C.f. In re Upton*, ___ B.R. ___, 2007 WL 809784 (Bankr. S.D. Ohio March 14, 2007) (figures from Form B22C do not dictate amount of plan payments).[11] *Cf. In re Slusher*, 359 B.R. 290, 297-98 (Bankr. D. Nev. 2007) (monthly disposable income as calculated on Form B22C provides a rebuttable presumption of projected disposable income).[12]

The *Brady* court observed that the term "projected disposable income" was not changed by the BAPCPA amendments. Thus, pre-BAPCPA interpretations of the term are still relevant. [T]he term "projected" requires the court to "project" forward the debtors' disposable income, as now defined under the revised Code, to determine the requisite payments to unsecured creditors under the plan." *Brady,* 2007 WL 549359 at *5. The court conceded that debtors who show surplus income when Schedules "I" and "J" are reviewed will not be required to apply that surplus to pay unsecured creditors if this methodology is used. Nonetheless, the *Brady* court found the language of BAPCPA to be clear on its face. "'[A]lthough contrary to the stated

---

[10] *Accord Kolb,* 2007 WL 960135; *In re Hanks*, 2007 WL 60812 (Bankr. D. Utah); *In re Miller,* 2007 WL 128790 (Bankr. N.D. Ala.); *In re Tuss,* 2007 WL 442051 (Bankr. D. Mont.); *In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C. 2006); *In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006); *In re Farrar-Johnson,* 353 B.R. 224 (Bankr. N.D. Ill. 2006); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006); *In re Rotunda*, 349 B.R. 324 (Bankr. N.D. N.Y. 2006).

[11] *Accord In re Hardacre*, 338 B.R. 718, 720 (Bankr. N.D. Tex. 2006); *In re Zimmerman*, 2007 WL 295452 (Bankr. N.D. Ohio); *In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006), *In re Risher*, 344 B.R. 833 (Bankr. W.D. Ky. 2006); *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006); *In re Balcerowski*, 353 B.R. 581 (Bankr. E.D. Wis. 2006); *In re Wayman*, 351 B.R. 808 (Bankr. E.D. Tex. 2006); *In re Edmunds,* 350 B.R. 636 (Bankr. D. S.C. 2006); *In re LaSota*, 351 B.R. 56, (Bankr. W.D. N.Y. 2006); *In re Dew*, 344 B.R. 655 (Bankr. N.D. Ala. 2006)

[12] *Accord In re Edmondson*, 2007 WL 656457 (Bankr. D. N.M.); *In re Jass,* 340 B.R. 411 (Bankr. D. Utah 2006); *In re Casey*, 356 B.R. 519 (Bankr. E.D. Wash. 2006); *In re Fuller,* 346 B.R. 472 (Bankr. S.D. Ill. 2006); *In re Foster*, 2006 WL 2621080 (Bankr. N.D. Ind.).

purpose of BAPCPA . . . , the unambiguous language of the new statute compels but one answer: the above-median debtor's expense deductions are governed by Form B22C, not by Schedule J.'" *Id.* at *7, *quoting In re Guzman*, 345 B.R. 640, 642 (Bankr. E.D. Wis. 2006). *See also In re Grunert*, 353 B.R. 591 (Bankr. E.D. Wis. 2006); *In re Alexander,* 344 B.R. 742 (Bankr. E.D. N.C. 2006); *In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006). "While this provision of the new statute does not perform as advertised, perhaps prompting trustees, unsecured creditors and even some bankruptcy judges to long for the 'good old days' of reviewing Schedules I and J . . . the mandate of new § 1325(b)(3) is clear." *Id.* at *7 (quoting *Guzman*, 345 B.R. at 646.)

By adopting a rigid, formulaic approach to calculating "projected disposal income" Congress has made it easier for the debtor, the trustee and creditors to predict the amounts that will be needed to fund a plan. This certainty has been acquired at a cost. Lacking flexibility, it is more likely that the statute, if strictly applied, will lead to an absurd result. As many courts have noted, a debtor's *actual* income on the date the first payment is due under the plan and his "disposable income" often will be the same, or at least, comparable. However, there will be cases in which a debtor may experience significant changes to income or expenses that can be predicted to persist into the future and which will not be reflected in the calculation of "projected disposable income."

A court must interpret a statute in accordance with its plain meaning if the language of the statute is clear and unambiguous, and where a literal interpretation of the statute would not produce a result demonstrably at odds with Congress's intent. *See Ron Pair Enterprises,* 489 U.S. at 242. This plain meaning rule, however, does not apply where the literal language of the statute will lead to an absurd result that could not have been intended by its drafters. *Id.* While the Court

13

concludes that in most cases "projected disposable income" is determined by multiplying monthly disposable income by the number of months in the applicable commitment period, it does acknowledge that there will be instances in which the use of this formula will produce an absurd result mandating the consideration of other factors. Illustrative situations include the loss of lucrative employment immediately prior to the filing of the petition with little prospect of obtaining comparable income within a reasonable period. Similar dire circumstances may occur on the deductions side as well. For example, the debtor or a member of his family may incur significant, uncovered medical expenses that will reduce disposable income.[13] Form B22C does not produce an absurd result in this case, however, so calculating disposable income by using the form is appropriate.

## II. Debtor's vehicle expenses as listed on Form B22C

Having determined that "projected disposable income" must be determined by reference to Form B22C, the second matter to be addressed is whether Debtors' plan must be denied confirmation because Debtors improperly calculated transportation deductions on Form B22C. Three errors are cited by eCAST in its objection to the calculation of allowable expense: (1) Debtors may not claim a transportation ownership deduction for a vehicle that is not subject to a lien; (2) Debtors may not claim a transportation ownership deduction when the actual ownership expense is less than the maximum deduction permitted under Internal Revenue Code Standards; and (3) Debtors may not claim a secured debt deduction based on the monthly payment amount

---

[13] 11 U.S.C § 707(b)(2)(B), as incorporated into § 1325(b)(3), specifically authorizes deductions that qualify as "special circumstances." Although the examples of "special circumstances" include only serious medical conditions and active duty in the armed forces, this provision is not limited to these two events.

14

of the contract rather than the balance due averaged over the applicable commitment period.

> a.  *May an above median income debtor claim a transportation ownership deduction for a vehicle that is not subject to a lien?*

Disposable income is calculated by deducting from current monthly income (excluding certain specified sources) amounts "reasonably necessary to be expended" for a debtor's living expenses. 11 U.S.C. § 1325(b)(2). Deductible expenses are to be determined under § 707(b)(2)(A)and (B). 11 U.S.C. § 1325(b)(3). The particular deduction that is at issue is described in § 707(b)(2)(A)(ii)(I). This provision provides that:

> [t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, . . .

11 U.S.C. § 707(b)(2)(A)(ii)(I).

As with the issue of "projected disposable income" discussed above, a number of courts have considered whether this provision permits a debtor to claim a transportation ownership allowance for a vehicle that is owned free and clear of liens and have arrived at different conclusions. Some courts which have denied the deduction have relied on the Internal Revenue Manual (the "IRM"), which aids the Internal Revenue Service in applying the standards in tax cases, to support this position. *See In re Hardacre*, 338 B.R. 718, 728 (Bankr. N.D. Tex. 2006) (the IRM clarifies that a deduction is authorized only for vehicles that are subject to a lease or purchase agreement); *In re Oliver*, 350 B.R. 294, 301 (Bankr. W.D. Tex. 2006) (same); *In re McGuire*, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006) (quoting the IRM that "if a taxpayer has no car payment, only the operating cost portion of the transportation standard is used to figure the

Case 1:06-bk-00788-MDF    Doc 62    Filed 06/08/07    Entered 06/08/07 15:23:29    Desc
Main Document      Page 15 of 19

allowable transportation expense."). Other courts disallowing the deduction have determined that the language of the statute prohibits a deduction for an unencumbered vehicle. *Slusher* at 308-09. (administrative interpretations of the standards assist in determining the meaning of the word "applicable" in the context of the statute); *In re Wiggs*, 2006 WL 2246432 at *3 (Bankr. N.D. Ill. Aug. 4, 2006) (a debtor's "applicable monthly expenses" is equated with "actual monthly expenses.") *See also In re Ross-Tousey*, ___ B.R. ___, 2007 WL 1466647 at *5 (E.D. Wisc. May 21, 2007) ("The fact that Congress has chosen to standardize the amount allowed for ownership expenses does not mean it also chose to make the Standards into fixed allowances guaranteed to every car owner.")

Other courts have found the term "applicable" to be unambiguous in the context of the statute and distinctive from the term "actual" when referring to a debtor's expenses. *See In re Chamberlain,* ___ B.R. ___, 2007 WL 1355894 (Bankr. D. Ariz. April 26, 2007); *Grunert*, 353 B.R. 591 (Bankr. E.D. Wis. 2006); *In re Fowler,* 349 B.R. 414 (D. Del. 2006); *In re Wilson,* 356 B.R. 114 (Bankr. D. Del. 2006); *In re Hartwick,* 352 B.R. 867 (Bankr. D. Minn. 2006); *In re Haley,* 354 B.R. 340 (Bankr. D. N.H. 2006); *In re Enright,* 2006 WL 748432 (Bankr. M.D.N.C. 2006). The *Grunert* court made the following observations:

> Congress drew a distinction in the statute between "applicable" expenses on the one hand and "actual" expenses on the other. "Other Necessary Expenses" must be the debtor's "actual" expenses. Expenses under the "Local Standards," in contrast, need only be those "applicable" to the debtor – because of where he lives and how large his household is. It makes no difference whether he "actually" has them. See Wedoff, supra, at 256 (noting that "a plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less").

*Grunert*, 353 B.R. at 593 (citing *Eugene R. Wedoff*, Means Testing in the New § 707(b), 79 Am. Bankr. L.J. 231 (Spring, 2005)). Accordingly, *Grunert* concluded that debtors are entitled to take

16

a standard vehicle ownership expense under the IRS guidelines even in situations where they own vehicles free and clear of liens. As observed by the court in *Chamberlain,* the use of the term "actual" monthly expenses in the same clause of the statute as "applicable" monthly expenses infers that Congress intended to distinguish the terms to achieve different results. *Chamberlain*, 2007 WL 1355894 at *3. *See also Fowler*, 349 B.R. at 418. ("The use of 'actual' with respect to Other Necessary Expenses and 'applicable' with respect to the National and Local Standards must mean that Congress intended two different applications.").

I concur with courts which have held that the plain language of § 707(b)(2)(A)(ii)(I) permits a debtor to claim a transportation ownership deduction regardless of whether the vehicle is encumbered or leased. This reading of the statute furthers a clear Congressional policy to achieve greater uniformity and to limit trustee and judicial discretion in the determination of reasonably necessary expenses.[14]

> b.  *May an above median income debtor claim a transportation ownership deduction in excess of the actual expense incurred*?

Debtors have claimed the Local Standard deduction in the amount of $421.00 even though the actual payment on the loan secured by the vehicle is only $270.80 per month. For reasons discussed above, I also conclude that a debtor may claim the "applicable monthly

---

[14]At first blush it may seem unfair to permit a debtor to claim a deduction for an expense that he does not have. As discussed earlier, however, because the deductions are projected out for the five-year duration of the plan, there is a strong likelihood that Debtors will have to incur debt to replace the unencumbered vehicles before their plan is completed. Although this Court must interpret the statute based upon the plain meaning and not the Court's opinion about its fairness, this provision seems far more equitable than the unlimited deductions for secured debt authorized by § 707(b)(2)(A)(iii), which clearly are authorized under the statute. For example, if Debtors in the within case had traded in their 2002 Impala and 1998 Tracker for a 2006 Lexis and a 2006 Hummer the year before they filed, they could have deducted secured debt of between $1200 and $1500 a month, which would have reduced Debtors' disposable income to a negative number.

expense" set forth in the Local Standards and is not limited to their "actual monthly expense." The amounts specified in the Standards are to be applied, not the lesser of the amount listed in the Standards and the actual expense.

> *c.    Have Debtors improperly calculated their plan payment by deducting the monthly payment under the purchase contract although the loan on Debtors' primary vehicle will be paid off prior to the end of the plan term?*

Section 707(b)(2)(A)(ii) (I), which incorporates the IRS Standards, provides that the monthly expenses of the debtor does not include "payments for debts." The phrase "payments for debts" has been interpreted as referring to the payments for secured debts, which are allowed as separate deductions in § 707(b)(2)(A)(iii). *Hardacre,* 338 B.R. at 726-27; *In re Singletary*, 354 B.R. 455, 471 (Bankr. S.D. Tex. 2006). This interpretation prevents a debtor from claiming the transportation ownership deduction in § 707(b)(2)(A)(ii) and also deducting the actual amounts being paid under § 707(b)(2)(A)(iii). *Hardacre* at 724-725. To effectuate this provision, Form B22C requires a debtor to deduct the "Average Monthly Payment" for debts secured by a vehicle from the transportation ownership standard for both the first and second vehicles. The effect of this calculation is that a debtor may deduct the higher of the Local Standard allowance listed on Line 28a or the "Average Monthly Payment" listed on Line 47. *Hartwick*, 352 B.R. at 868. ("All of the courts agree that BAPCPA provides that the Local Standards are to be used as a minimum allowance, trumped by the actual expense if the actual expense is higher.").

Debtors' Form B22C at Line 47c reports a deduction of $270.80 per month, which is the monthly contract amount for the car payments to M&T Bank. This entry is incorrect because Debtor should have reported the total of all amounts contractually due to M&T Bank in the 60 months following the filing of the petition divided by 60 as specified in the instructions for Line

18

47. Debtors reported on their schedules a balance due on the loan of $5957.60. When this amount is divided by 60, the correct "Average Monthly Payment" is $99.29. Therefore, the payment of $99.29 should have been entered on Form B22C, Line 47c, rather than the amount listed of $270.80. However, Debtors also should have computed the transportation ownership expense on Line 28 by deducting $99.29 from the Local Standard amount of $471.00 producing a net ownership expense of $371.71. Because Debtors' transportation ownership expense claimed on Line 28 is greater than the Average Monthly Payment on secured debt claimed on Line 47, Debtors' error had no effect on the final deduction calculation.

## Conclusion

Accordingly, for the reasons set forth above, the objections in this case are overruled, and Debtors' plan may be confirmed. An appropriate order will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: June 8, 2007

*This document is electronically signed and filed on the same date.*